UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY P. DIPAOLO and KATHLEEN J. DIPAOLO, husband and wife,<br><br>      Plaintiffs,<br><br>   v.<br><br>BLACK AND DECKER (US) INC., et al.,<br><br>      Defendants. | CIVIL ACTION<br><br>No. 07-4314 |

Pollak, J.                                                                                            December 15, 2009

**OPINION**

      On November 15, 2005, plaintiff Gregory DiPaolo was using a miter saw to cut molding when he suffered an accident resulting in the loss of his right index finger. DiPaolo and his wife have sued the manufacturer, designer, and seller of the saw (collectively, "defendants") for damages arising from this accident. Plaintiffs' expert witness, Fredric M. Blum, wrote a report opining that the accident occurred because DiPaolo was using a bowed piece of wood, which caused the saw to kick back, drawing DiPaolo's hand into the blade. Defendants have deposed Blum and now move (docket no. 22) to exclude Blum from testifying either that the molding was bowed or that the accident occurred because DiPaolo was using bowed wood. Defendants further contend that, with that testimony excluded, they are entitled to summary judgment (docket no. 21).

Plaintiffs have filed oppositions to both motions (docket nos. 23 and 24). For the reasons below, the court will grant defendants' motion in limine and grant in part and deny in part defendants' motion for summary judgment.

## I.

### A.

Defendants' motion in limine challenges both Blum's qualifications and the reliability of his testimony. "[A] broad range of knowledge, skills, and training qualify an expert as such," and "exclusion [is] not the proper remedy simply because the experts did not have the degree or training which the . . . court th[inks] would be most appropriate." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) (internal quotation marks omitted). In particular, "[s]pecific experience with respect to a particular product . . . is not a *sine qua non* of qualification to testify." *Fisher v. Clark Aiken Matik, Inc.*, No. 99-cv-1976, 2006 WL 140424, at *3 (M.D. Pa. Jan. 18, 2006); *see also Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) (rejecting the "requirement that the witness practice a particular specialty to testify concerning certain matters"). The court of appeals has, for instance, found that a district court did not abuse its discretion in allowing an individual with experience "selling automotive and mechanical equipment" who had "taught automobile repair and maintenance at a high school" to testify as an expert in a case involving an allegedly defective tractor. *Hammond v. Int'l Harvester Co.*, 691 F.2d 646, 653 (3d Cir. 1982); *see also Holbrook*, 80 F.3d at 781 (citing to

*Hammond* after the Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).

When faced with a challenge to expert testimony, meanwhile, this court must "determine . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. The same gatekeeping function applies where a witness proposes to testify to "technical or other specialized knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (internal quotation marks omitted). "Reliability [is] the polestar" of the *Daubert* inquiry, *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004), and while the "inquiry . . . is a flexible one," *In re Paoli*, 35 F.3d at 742, "the factors that are relevant" to a reliability analysis include the following:

> "(1) whether a method consists of a testable hypothesis; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the nonjudicial uses to which the method has been put."

*Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000) (quoting *In re Paoli*, 35 F.3d at 742 n.8). Courts have, in the products liability context, also considered "federal design or performance standards"; "standards published by independent standards organizations"; "discussion of the relevant literature" by the expert, including "general design manuals or industry-specific journals"; "industry practice"; "product or design history"; the presence

3

of "charts, diagrams, and other visual aids"; "scientific testing"; "whether [a] proposed alternative design . . . is feasible"; and "the risk-utility of [any] suggested modification." *Milanowicz v. The Raymond Corp.*, 148 F. Supp. 2d 525, 533-36 (D.N.J. 2001).

The reliability standard "is not that high." *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999). In particular, "'*Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct,'" but only that the "'testimony rests upon good grounds, based on what is known.'" *Mitchell*, 365 F.3d at 244 (quoting *Ruiz-Troche v. Pepsi Cola Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998)) (internal quotation marks omitted). Nevertheless, "[a] court 'must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used,'" *Oddi*, 234 F.3d at 146 (quoting *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999)), and "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert," *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

**B.**

As revealed in his deposition, Blum's qualifications include a bachelor's degree in mechanical engineering and over thirty years' experience as a forensic mechanical engineer. Blum dep. at 6-7. During those thirty years, Blum has "investigated accidents, failures, and fires involving all sorts of mechanical equipment, including various kinds of

saws," such as "[t]able saws, portable circular saws, and miter saws." *Id.* at 15-16, 22. In sum, Blum has been involved in "[p]robably two or three dozen" investigations concerning table saws and an equal number concerning circular saws, but no more than "two or three" cases dealing with miter saws – including the present controversy. *Id.* at 22-23. Blum has also been an avocational woodworker, and in performing home maintenance projects, he has occasionally used a miter saw. *Id.* at 12-15, 49-53.

Defendants argue that Blum is unqualified to serve as an expert in this case, because he (1) "has no education or training in accident reconstruction," (2) "has never designed, installed, or serviced any type of power equipment," (3) has never worked as a woodworker "or in any other position that would give him expertise to determine under what conditions a kickback occurs or whether a bowed piece of [wood] is [a] necessary" prerequisite for DiPaolo's accident, and (4) has no "specialized knowledge or experience relating to the operation of miter saws, kickbacks, or working with bowed wood." Defs.' Mem. in Supp. of Mot. in Limine ("Defs.' Mem.") at 4.

I find that Blum is qualified to testify as an expert in this case. His degree in mechanical engineering and extensive experience in reconstructing various types of accidents – including accidents involving saws and other power tools – are sufficient credentials, standing alone, to render Blum's opinion much more informed than that of "the average layman." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) (internal quotation marks omitted). In particular, Blum's experience as a forensic mechanical

engineer surmounts any objection based on either (1) his lack of "training in accident reconstruction," or (2) the fact that he has not designed, installed, or serviced power tools or worked as a professional woodworker. Meanwhile, the contention that Blum lacks "specialized knowledge or experience relating to the operation of miter saws, kickbacks, or working with bowed wood" takes a much too narrow view of the expertise potentially relevant to this case. Put another way, an expert in miter saws and their operation and behavior might be the ***best*** expert for this case, but plaintiffs need not tender an optimal witness. Rather, any expert that "ha[s] 'specialized knowledge' regarding the area of testimony" will suffice, and Blum meets that criterion. *Id.*

## C.

Blum's "Engineering Report," Defs.' Ex. B, includes a detailed description of the saw and DiPaolo's use of it, which culminated in the amputation of DiPaolo's right index finger. The report then provides a reconstruction of the accident "based on the configuration of the saw and simple physics." *Id.* at 4. Blum concludes that "the accident represented a kickback event that probably resulted from the workpiece having been bowed and positioned improperly on the saw without a mechanical means (clamp) to secure the workpiece in position." *Id.* Specifically, Blum opines that a piece of molding that was "bowed concave toward the [saw] fence[1]" caused the kickback. *Id.* This

---

[1] The "fence" is the barrier against which the workpiece rests while a cut is being made. *See* Defs.' Ex. B, at 2.

occurred, Blum believes, as follows: "[T]he blade teeth exert force on the workpiece in the direction toward the fence," "flatten[ing] (open[ing]) the concave shape of the workpiece," while the initiation of a cut on the convex edge opens a slot that becomes "squeeze[d]" by "the flattening of the concave shape." *Id.* Then, "[a]t some point, the sides of the [cut] pinch the blade so strongly that" it stops, and its "considerable rotational inertia is . . . transformed into a sudden, powerful force on the workpiece in the direction of the fence." *Id.* This transformation yields a kickback, which Blum believes "carried the workplace leftward so that Mr. DiPaolo's right hand . . . was carried into the blade." *Id.* On the basis of this reconstruction, Blum concluded that the saw was defective because it failed to include a hold-down clamp – which Blum believes "probably [would have prevented] the kickback and certainly [would have prevented] Mr. DiPaolo's injury if a kickback occurred" – and because the manual failed to warn that a kickback and possible injury could occur if a bowed workpiece was cut with the concave edge facing the fence. *Id.* at 5-6.

At his deposition, Blum testified that he inspected the saw on November 21, 2008. Blum dep. at 38. This inspection included running the saw and placing "a short piece of [the] molding that Mr. DiPaolo was cutting at the time of the accident" on the saw, but Blum himself did not "cut any wood." *Id.* at 47-48. Blum also amplified his report by stating that, when the kickback occurred, the workpiece likely "fracture[d] at or near the point of the cut" as the transfer of force from the blade moved it towards the saw fence.

7

*Id.* at 67. The workpiece would, Blum said, then "bounce[] . . . off" the fence and perhaps "rotate counterclockwise," bringing DiPaolo's "right hand into contact with the blade," especially if "his grip on the workpiece was dislodged." *Id.* at 67-68. He found "evidence. . . that the kickback occurred" in the form of DiPaolo's deposition testimony that "he heard a bang noise, which is the hallmark of a kickback," and he testified that such kickbacks result from "the blade being pinched in the process of cutting and then" either "stopping" or experiencing "extremely high friction." *Id.* at 69, 71, 74.

As to the possibility of a bowed workpiece, Blum admitted that there was "no evidence anywhere that the board" DiPaolo was using "was bowed" or that DiPaolo "thought the wood was bowed," and Blum further admitted that he could not inspect the molding, as most of it "wasn't saved." *Id.* at 68-69, 81. Presumably for safety reasons, Blum also did not "do any tests" to determine how far away a user of the saw would need to hold the workpiece in order to avoid being drawn into the blade if a kickback occurred – and he stated that there is no "mathematical analysis" to determine an answer to that question. *Id.* at 73. Nevertheless, Blum opined that "you have to have a bowed piece of wood in order for" the kickback "scenario to occur" and that there was "probably not" a reason to use a clamp for the cut DiPaolo was making if the wood was not bowed. *Id.* at 85, 99. Blum further stated that his view that bowing caused the blade to stop or experience friction arose from the fact of the accident, the physics involved, and Blum's prior experience. *Id.* at 69-72.

8

On the basis of Blum's deposition, defendants aver that he "is without sufficient factual predicate to conclude that the wood that Mr. DiPaolo was cutting . . . was bowed and that the bowed nature of this wood caused the accident." *Id.* at 5. In the alternative, defendants contend that "Blum has engaged in improper methodology in reaching his conclusion[s]." *Id.* Specifically, defendants argue that Blum "merely relies on documents provided to him by [p]laintiffs' counsel" and that his "conclusions . . . are pure speculation and conjecture," unsupported by "any generally accepted methodology," any "testing," or "methodology beyond his own intuition." *Id.* at 6-7.

The logic of Blum's report is essentially that because there was a kickback, DiPaolo was necessarily using bowed wood with the concave side facing the saw fence. The premise – that a kickback occurred – is grounded in DiPaolo's report of a bang. In order to believe the conclusion that DiPaolo was using bowed wood, however, a fact-finder could, on this record, only rely on Blum's say-so.

As noted above, Blum presented three reasons for his belief that the accident occurred when bowed wood caused the blade to stop or slow: (1) bowing was, in Blum's experience, the cause of kickbacks, (2) the accident occurred, and (3) general principles of physics support this interpretation of events. Blum's appeal to his past experience is a classic case of an expert relying on his own *ipse dixit*, and under the circumstances, given the presumable availability of empirical testing to determine when kickbacks occur, such an appeal is insufficient. *See Cantor v. Perelman*, No. 97-586, 2006 WL 3462596, at *8

9

(D. Del. Nov. 30, 2006) (suggesting that "experience-based testimony" is permissible in a field – but only when testable hypotheses are not available). The second reason – that the accident occurred – adds nothing to the analysis, because the fact of the accident does not explain why or how its occurrence necessarily implies the use of bowed wood. Finally, although appeals to general scientific principles are appropriate as part and parcel of a reliable methodology, a wholesale, unexplained reliance on those principles as the sum total of an expert's methodology does not pass *Daubert* scrutiny. *See Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 Fed. Appx. 781, 789 (3d Cir. 2009) (affirming the exclusion of expert evidence over the claim that "generally accepted principles of basic physics (recognized since the time of Sir Isaac Newton)" are, without more, sufficient to render an expert's methodology reliable).

Blum's conclusion is not only unexplained but apparently untested. Blum did visually inspect the saw, and his reluctance to undertake to reproduce the precise circumstances of the accident is understandable. However, the report and deposition reveal that Blum (1) performed no tests with appropriate safety precautions such as utilizing a clamp, the step Blum himself argues would certainly have prevented DiPaolo's injury, (2) ran no tests to determine whether kickbacks can be caused in other ways, (3) has cited to no literature, formal or informal, concerning how or why kickbacks occur, and (4) presented no reason to believe that his views of the causes of kickbacks have been reviewed or accepted by other engineers. Blum's methodology was therefore insufficient

to rule out any alternative causes – but instead resulted in "ruling in a completely untested cause based" on his own experience. *Viking Yacht Co. v. Composites One LLC*, 615 F. Supp. 2d 327, 335 (D.N.J. 2009) (finding a sizeable "analytic gap between ruling out some, but not all, of the known causes, and ruling in a completely untested cause based solely on historical evidence from the industry") (internal quotation marks omitted).

Thus, Blum "used little, if any, methodology beyond his own intuition" to reach his conclusion that bowed wood caused the accident. *Oddi*, 234 F.3d at 158. As a result, his conclusion that the workpiece was bowed does not survive *Daubert* scrutiny. *See, e.g.*, *Meadows*, 306 Fed. Appx. at 789 (affirming the exclusion of testimony where the expert not only "did not attempt to replicate the conditions . . . at the time of the accident" but also gave "no reference to material, publication or literature describing the failure scenario," presented "no evidence that his methodology was subjected to peer review or that it is generally accepted," cited to "no outside documentary evidence," and presented the court with "no evidence concerning any known or potential error rates in his testing[] and no control standards"); *Johnson v. SJP Mgmt. LLC*, No. 07-5545, 2009 WL 367539, at *13 (E.D. Pa. Feb. 12, 2009) (rejecting an opinion that "appear[ed] to be based more on an instinctive reaction to the materials . . . provided than on any testable hypothesis"); *Booth v. Black & Decker, Inc.*, 166 F. Supp. 2d 215, 221 (E.D. Pa. 2001) (excluding the testimony of an expert who "performed no tests of his own to determine whether his hypotheses were indeed true" but rather "merely examined the [allegedly defective]

11

toaster oven and concluded it could have been safer"); *Hamilton v. Emerson Elec. Co.*, 133 F. Supp. 2d 360, 372 (M.D. Pa. 2001) (rejecting the testimony of an expert who reached the "conclusion that the [miter] saw was defective . . . based only on his own authority"). Accordingly, I will grant defendants' motion in limine to exclude Blum from testifying that DiPaolo was using bowed wood or that a bowed workpiece caused the accident at issue.[2]

## II.

Having concluded in the previous section that Blum may not testify to his belief that the workpiece plaintiff was cutting at the time of the accident was bowed, I now consider defendants' motion for summary judgment.

### A.

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment

---

[2] Plaintiffs have not requested a *Daubert* hearing, and I find that a hearing would not aid in the disposition of defendants' motion. A hearing is not required where the record is "sufficient to allow an inquiry under *Daubert*." *Oddi*, 234 F.3d at 153. Here, Blum's report and his deposition transcript afford sufficient insight into his methodology and "how [he] . . . arrived at his conclusions about the" miter saw and therefore obviate any need for a hearing. *Id.*; *see also, e.g.*, *Feit v. Great-West Life & Annuity Ins. Co.*, 460 F. Supp. 2d 632, 637-38 (D.N.J. 2006) (declining to hold a hearing when the relevant issues had been briefed and the court had been provided with deposition transcripts showing "that the [p]laintiff's experts . . . had ample opportunity to respond to [d]efendant's challenges to their conclusions, analyses and methodologies, and to explain their methods and opinions").

as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists where the jury could reasonably find for the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute over facts is material where it could affect the outcome of the case, *Belitskus v. Pizzingrilli*, 343 F.3d 632, 639 (3d Cir. 2003). "In considering the evidence, the court should draw all reasonable inferences against the moving party." *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

A party seeking summary judgment carries the initial burden of informing the district court of the basis for its motion and identifying the portions of the record that show that there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Belitskus*, 343 F.3d at 639. Where the non-moving party bears the burden of proof, the moving party must show that the non-moving party cannot support its case with the evidence in the record. *Celotex*, 477 U.S. at 325. In rebuttal, the non-moving party must then identify facts that create a genuine issue of dispute for trial. Fed. R. Civ. P. 56(e); *Hampton v. Borough of Tinton Falls Police Dep't*, 98 F.3d 107, 112 (3d Cir. 1996). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**B.**

Plaintiffs' complaint asserts theories of strict liability, breach of warranty, and

negligence. Defendants counter that, once Blum's conclusion that the molding was bowed is excluded, they are entitled to summary judgment because, absent Blum's testimony, "[p]laintiffs have no evidence" that the wood was bowed, and because "[w]ithout evidence that the subject wood piece was bowed at the time of the accident, Mr. Blum and Plaintiffs cannot prove that the alleged defects caused the accident." Defs.' Mem. at 3. Further, defendants argue that if "[p]laintiffs cannot prove that the alleged defects caused the accident," "there would be no logical way that a jury could determine from the evidence in this case the proximate cause of the accident." *Id.*

Defendants' first argument – that absent evidence of bowing, there is no proof that defects in the saw caused the accident – implicates the viability of both the strict liability and breach of warranty claims. "To prevail on [a] strict liability claim" under Pennsylvania law, "the plaintiff must prove (1) that the product was defective, (2) that the defect existed when it left the hands of the defendant, and (3) that the defect caused the harm." *Robinson v. Midwest Folding Prods. Corp.*, No. 07-cv-3837, 2009 WL 928503, at *2 (E.D. Pa. Apr. 7, 2009) (internal quotation marks omitted); *accord, e.g.*, *Agostino v. Rockwell Mfg. Co.*, 345 A.2d 735, 738 (Pa. Super. Ct. 1975). Similarly, to show that the defendants breached either the implied warranty of merchantability or the warranty of fitness for a particular purpose, plaintiffs must demonstrate both (1) "that the equipment

they purchased from defendant was defective,"[3] *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992), and (2) that the breach of warranty embodied by the defect "was the proximate cause of the loss sustained," 13 Pa. Cons. Stat. Ann. § 2314, cmt. 13; *accord, e.g.*, *Stephenson v. Sunbeam Prods., Inc.*, 545 F. Supp. 2d 498, 505-06 (W.D. Pa. 2008).[4]

Defendants are correct that the exclusion of Blum's bowed wood theory forecloses any reliance by plaintiffs on the first defect alleged in Blum's report. Without evidence that DiPaolo was cutting bowed wood, there is no basis for the conclusion that defects in the manual's description of cutting bowed wood caused DiPaolo's injury. Accordingly, summary judgment will be granted to the defendants as to this theory of strict liability and breach of warranty.

---

[3] One major exception exists to the rule that plaintiffs must provide direct evidence that the product was defective. Where the plaintiff cannot "prove the precise nature of the defect . . . reliance may be had on the 'malfunction' theory of product liability." *Rogers v. Johnson & Johnson*, 565 A.2d 751, 754 (Pa. 1989). Under this theory, a plaintiff may "prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction." *Id.* But to demonstrate a malfunction, the plaintiff must, of course, proffer evidence "that the product malfunctioned." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992). No such evidence is in the record before this court – in fact, Blum agreed at his deposition that the miter saw is "designed to cut anything that comes in contact with it," including "fingers and hands." Blum dep. at 110. Plaintiffs' strict liability and breach of warranty claims thus must stand or fall on their ability to demonstrate that an identified defect caused DiPaolo's injury.

[4] The Pennsylvania Supreme Court has noted that strict liability and breach of warranty claims are not coterminous. *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 n.6 (Pa. 2005). *Phillips* does not, however, appear to abrogate the rule that breach of warranty claims should be premised on a defect in the product.

The question of causation is more complex as it pertains to Blum's hypothesis that the lack of a clamp as standard equipment rendered the saw defective. At his deposition, Blum testified that the fact that "[t]he workpiece was bowed" grounded his conclusion that DiPaolo's work "requir[ed] the use of a clamp," Blum dep. at 96, and he admitted both that it is "[w]hen you have a bowed piece . . . [that] you have to take some other means to make th[e] workpiece safe and invulnerable to kickbacks," *id.* at 105, and that there was "probably not" any other reason to believe a clamp was necessary for the work, *id.* at 99. Blum did assert that "[g]iven [DiPaolo's specific] work setup, using a clamp would have prevented the accident," but the reasoning behind this conclusion is likewise dependent on the assumption that the wood was bowed. *Id.* at 96.

Nevertheless, Blum's report imparts an alternative causal story. The report opines that (1) "[i]f a hold-down clamp had been available at the time of the accident," DiPaolo would have used the clamp, (2) "[i]f the workpiece had been clamped down, he would not have had to grasp the workpiece with his right hand," and (3) even if DiPaolo still held the molding in his right hand, "if a kickback occurred, the workpiece would not have been able to shift laterally toward the blade," and the accident thereby would have been avoided. Defs.' Ex. B, at 6. In other words, in this account, the lack of a clamp constitutes a defect because use of the clamp would have prevented the kickback from causing DiPaolo's injury, without any reference to whether or not the workpiece was

16

bowed.[5] Because nothing in this causal account relies on whether or not the workpiece was bowed, there is a genuine issue of material fact for trial as to whether (1) the lack of a clamp as standard equipment constitutes a defect, and (2) this defect caused DiPaolo's injury.

A similar causal story may – perhaps – be constructed around Blum's view that the manual's paragraph on clamp use provides inadequate warnings.[6] Although Blum did not proffer ideal instructions regarding clamp use, he believes that instructions "to use the clamp when at all possible" would be an improvement over the current language stating to use a clamp "for best results." Blum dep. at 93. Blum also implied that the paragraph on clamps should refer specifically to "the hazard of a kickback." *Id.* at 94. A fact-finder could therefore conclude that, with the proper warnings, DiPaolo would have procured a clamp, preventing both the kickback and the accident – and given that this discussion in the manual is not limited to bowed wood, the exclusion of Blum's testimony that the workpiece was bowed is not fatal to this theory. Plaintiffs may thus proceed to trial on the strict liability and breach of warranty claims on the basis of (1) the failure to include a clamp as standard equipment, and (2) the alleged inadequacies in the manual's

---

[5] This view of events is further supported by Blum's testimony that the manual recommends use of the clamp when making precision cuts and that DiPaolo's work constituted a precision cut. Blum dep. at 107.

[6] For reasons that are unclear, neither the plaintiffs nor the defendants have placed the text of the manual paragraph on clamps in the record. The text is presented only in the very brief excerpts discussed at Blum's deposition.

instructions on clamp usage.

## C.

The question of whether or not the saw was defective does not directly enter into the analysis of plaintiffs' negligence claims. The Pennsylvania Supreme Court has distinguished strict liability claims from negligence claims on the basis that while "[s]trict liability examines the product itself, and sternly eschews considerations of the reasonableness of the conduct of the manufacturer," "a negligence cause of action revolves around an examination of the conduct of the defendant." *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003). Thus, to focus on the product in analyzing a negligence claim would be to "divorce [the] analysis from the elements of the tort." *Id.* Instead, this court must consider whether or not a genuine issue of material fact exists on the elements of a negligence claim – *viz*., the existence of a duty, a breach of that duty, "that such breach caused the injury in question," and damages. *Id.*

Defendants' second argument – that without evidence of a defect, there is no way for a jury to determine what, precisely, caused the accident – does constitute a challenge to the causation element of the negligence claims, but summary judgment is not proper on this basis. As discussed above, Blum's remaining testimony provides evidence that (1) the accident occurred when a kickback drew DiPaolo's hand into the saw, and (2) a clamp would have prevented both the kickback and the accident. Accordingly, assuming that defendants owed and breached a relevant duty of care to plaintiffs, plaintiffs have raised a

material issue of fact as to whether such a breach proximately caused DiPaolo's injury. The motion for summary judgment will therefore be denied as to plaintiffs' negligence claims.

### III.

For the foregoing reasons, (1) defendants' Motion in Limine, or, in the Alternative, *Daubert* Hearing to Preclude Plaintiffs' Expert Fredric M. Blum from Testifying to certain conclusions will be granted, and Blum will be excluded from testifying either that (a) DiPaolo was using bowed wood at the time of the accident, or (b) a bowed workpiece caused the accident; and (2) defendants' motion for summary judgment (a) will be granted as to the strict liability and breach of warranty claims (Counts II, III, V, and VI of the complaint) insofar as those claims rely on the theory that the manual for the miter saw at issue provides inadequate instructions concerning the cutting of bowed wood, and (b) will otherwise be denied. An appropriate order accompanies this opinion.